# The Supreme Court of South Carolina

In the Matter of Fulton Casey Dale Cornwell,
Respondent.

Appellate Case No. 2018-001660

## ORDER

By opinion dated February 27, 2019, respondent was disbarred from the practice of law, retroactive to the date of his interim suspension.[1] *In re Cornwell*, Op. No. 27864 (S.C. Sup. Ct. filed Feb. 27, 2019) (Shearouse Adv. Sh. No. 9). The Office of Disciplinary Counsel (ODC) has filed a petition for rehearing. Respondent did not file a response. After careful consideration of ODC's petition for rehearing, we grant the petition for rehearing, dispense with further briefing, and substitute the attached opinion for the opinion previously filed in this matter.

| | |
|---|---|
| s/ Donald W. Beatty | C.J. |
| s/ John W. Kittredge | J. |
| s/ Kaye G. Hearn | J. |
| s/ John Cannon Few | J. |
| s/ George C. James, Jr. | J. |

Columbia, South Carolina

April 24, 2019

---

[1] On February 17, 2017, this Court placed respondent on interim suspension. *In re Cornwell*, 419 S.C. 238, 797 S.E.2d 395 (2017).

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Fulton Casey Dale Cornwell,
Respondent.

Appellate Case No. 2018-001660

---

Opinion No. 27864
Submitted February 6, 2019 – Filed February 27, 2019
Withdrawn, Substituted, and Refiled April 24, 2019

---

## DISBARRED

---

John S. Nichols, Disciplinary Counsel, and Ericka
McCants Williams, Senior Assistant Disciplinary
Counsel, both of Columbia, for the Office of Disciplinary
Counsel.

Fulton Casey Dale Cornwell, of Columbia, *pro se*.

---

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21, RLDE, Rule 413, SCACR.  In the
Agreement, respondent admits misconduct and consents to a three-year suspension
or disbarment.  We accept the Agreement and disbar respondent from the practice
of law in this state, retroactive to the date of his interim suspension.[2]  The facts, as
set forth in the Agreement, are as follows.

---

[2] Respondent was placed on interim suspension on February 17, 2017.  *In re
Cornwell*, 419 S.C. 238, 797 S.E.2d 395 (2017).

## Facts

*Matter I*

After being appointed to represent a client in a post-conviction relief (PCR) matter, respondent failed to keep his client reasonably informed of the status of the matter and failed to respond to reasonable requests for information.

*Matters II, IV, VI, & VIII*[3]

Respondent was appointed or retained to represent various clients in PCR matters. During respondent's representation of the clients in Matters II, IV, and VI, respondent failed to keep the clients reasonably informed as to the status of their cases. In Matters VI and VIII, respondent failed to respond to the clients' reasonable requests for information.

Additionally, in Matters II, IV, and VIII, respondent failed to respond to the initial notices of investigation (NOI) and to the *Treacy*[4] letters from ODC seeking responses to the complaints.[5] In Matter VI, respondent initially failed to respond to the NOI but later filed a written response to the NOI upon a written inquiry from ODC.

*Matter III*

Although the underlying complaint in this matter was ultimately determined to be without merit, respondent failed to respond to the NOI.

*Matter V*

In February 2013, respondent was appointed to represent a client in a PCR matter. Following an adverse ruling at an evidentiary hearing, the client mailed a letter

---

[3] Respondent appeared before ODC and answered questions on the record as they related to Matters III, IV, V, VI, and VIII.

[4] *In re Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982).

[5] Regarding Matter II, respondent called ODC about a different matter and ODC informed him that it was waiting for his response to this matter. Respondent stated he had not received a NOI or *Treacy* letter. ODC resent the NOI and received a response a week later.

seeking an appeal to an incorrect address for respondent. Respondent asserts he did not receive the client's letter. The client later mailed a letter to this Court requesting an appeal and attached a copy of the original letter he sent to respondent. This Court forwarded a copy of the client's request to respondent. Respondent contends he first learned of the request for an appeal when he received this Court's letter. However, respondent did not contact the client or serve the requested notice of appeal.

Additionally, respondent did not respond to the NOI or the *Treacy* letter from ODC seeking a response.

## *Matters VII & IX*

Respondent was appointed to represent clients in PCR matters, but failed to respond to the clients' requests for information regarding their cases. Additionally, in Matter IX, respondent failed to keep the client reasonably informed as to the status of the case. Both clients' PCR actions were dismissed and they filed *pro se* notices of appeal.

After receiving the *pro se* notice of appeal in Matter VII, this Court mailed respondent a letter requesting the date on which respondent received written notice of the order of dismissal of the client's PCR matter. Respondent failed to respond. The Court then directed respondent to respond by January 15, 2016, and to include an explanation as to why he failed to respond initially. Respondent eventually responded to the Court's inquiries but failed to provide the date on which he received written notice of the dismissal of the client's PCR matter. The Court again requested the information and gave respondent ten days to respond. Respondent failed to respond to the Court's inquiry, and the Court dismissed the appeal without prejudice.

After receiving a *pro se* notice of appeal in Matter IX, this Court notified respondent and requested that he provide an explanation as required by Rule 243(c), SCACR. Respondent informed the Court that he had been relieved as counsel. After determining that respondent had not been relieved as counsel, the Court sent respondent another letter requesting he provide the required explanation. Respondent did not respond within the fifteen-day timeframe. Thereafter, the Court, by order dated September 22, 2016, requested respondent provide a written explanation within ten days of the Court's order. On October 14, 2016, the Court received respondent's explanation, which it found insufficient under Rule 243(c), SCACR. The Court then required respondent to file a response that complied with *Dennison v. State*, 371 S.C. 221, 639 S.E.2d 35 (2006)

(allowing counsel to inform the Court if counsel is unable to set forth an arguable basis for asserting the PCR court's determination was improper). Respondent did not respond within the ten-day timeframe. The Court relieved respondent as counsel and directed Appellate Defense to represent the client.

*Matter X*

Respondent was appointed to represent a client in a PCR matter, and a hearing was conducted on April 14, 2015. After the hearing, the client requested a copy of his PCR transcript from respondent and that an order be drafted regarding the hearing. Respondent did not respond to the client's requests.

ODC sent respondent a NOI, followed by a *Treacy* letter, to which respondent did not respond. Thereafter, ODC sent respondent a notice of additional allegations and requested a response within fifteen days. Respondent did not respond.[6]

*Matter XI*

In May 2016, respondent was retained to represent a client in a domestic relations action. Respondent failed to (1) adequately communicate with the client regarding the status of the case; (2) comply with reasonable requests for information; and (3) respond to the client's request for a refund of his fee after terminating respondent's representation. In response to the allegations, respondent asserts he did not return the fee because the case was a flat rate case and he had earned the fee. While respondent contends he drafted documents on the client's behalf, he never entered a notice of appearance on behalf of the client or filed any documents on the client's behalf.

Additionally, there was conflicting language in the fee agreement regarding when the fees were due to be paid by the client and when the fees would be treated as earned. The fee agreement also did not include language notifying the client that he might be entitled to a partial or full refund if the agreed-upon legal services were not provided.

*Matter XII*

In November 2015, BB&T informed ODC that a check was presented against insufficient funds on respondent's trust account. ODC mailed a NOI to respondent requesting the following: (1) a written response; (2) checks related to the overdraft; (3) copies of his bank statements; (4) documentation that funds were fully restored

---

[6] Respondent appeared before ODC and answered questions on the record.

to the trust account; and (5) a complete copy of his trust account reconciliation. Respondent did not respond.

Thereafter, ODC sent respondent a *Treacy* letter via certified mail to his address on file with the Attorney Information System. However, the letter was returned as unclaimed. ODC later received a response, which failed to include the information requested in the NOI. ODC then subpoenaed BB&T for copies of respondent's bank statements relating to his trust account. Upon ODC's review of the statements, ODC discovered respondent's trust account contained withdrawals for several items made payable to cash as well as payments for personal expenses.

In response, respondent asserted the trust account was set up only for the deposit of a settlement for one case and any additional deposits into the trust account were from earned fees. However, respondent admits he improperly used his trust account. Respondent cannot demonstrate that the funds in his trust account were handled properly because he did not maintain accurate records as required by the rules for financial recordkeeping.

## Law

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (competence); Rule 1.3 (diligence); Rule 1.4 (communication); Rule 1.5 (fees); Rule 1.15(a) (safeguarding client property); Rule 1.15(b) (commingling funds); Rule 1.15(c) (keeping of unearned legal fees in trust account); Rule 1.16 (declining or terminating representation); Rule 3.3(a) (making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously made to the tribunal by the lawyer); Rule 3.4(c) (disobeying an obligation under the rules of a tribunal); Rule 8.1(a) (knowingly making a false statement of material fact in connection with a disciplinary investigation); Rule 8.1(b) (failing to respond to a demand for information from a disciplinary authority); Rule 8.4(a) (violating the Rules of Professional Conduct); and Rule 8.4(e) (engaging in conduct prejudicial to the administration of justice).

Respondent further admits he violated the following rules regarding Financial Recordkeeping, Rule 417, SCACR: Rule 1 (financial recordkeeping); Rule 2 (client trust account safeguards); Rule 3 (requiring Rule 1 records to be readily accessible to the lawyer); and Rule 6 (precluding cash withdrawals from trust accounts).

Respondent also admits his conduct constitutes grounds for discipline under the

following provision of the RLDE: Rule 7(a)(1) ("It shall be a ground for discipline for a lawyer to: (1) violate or attempt to violate the Rules of Professional Conduct, Rule 407, SCACR, or any other rules of this jurisdiction regarding professional conduct of lawyers . . . .").

## Conclusion

We accept the Agreement and disbar respondent from the practice of law in this state. Respondent is ordered to enter into a payment plan with the Commission on Lawyer Conduct to pay the costs incurred in the investigation and prosecution of these matters within thirty (30) days of the date of this opinion. Respondent is also ordered to complete the Legal Ethics and Practice Program Law Office Management School and Trust Account School prior to seeking reinstatement.

Additionally, prior to seeking reinstatement, respondent must demonstrate his compliance with Rule 33, RLDE, Rule 413, SCACR (reinstatement following a definite suspension for nine months or more or disbarment), including completion of Legal Ethics and Practice Program Ethics School within the preceding year.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

**BEATTY, C.J. KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**